Richard R. Thomas, AZ Bar No. 010484
SMITH LC
40 North Center Street, Suite 104
Mesa, Arizona 85201
480.361.8575
rthomas@smith-lc.com

Mel C. Orchard, III (admission *pro hac vice* to be filed)
THE SPENCE LAW FIRM, LLC
P.O. Box 548
Jackson, Wyoming
307.733.7290
orchard@spencelawyers.com

Dennis K. Wallin (admission *pro hac vice* to be filed)
Alisa C. Lauer (admission *pro hac vice* to be filed)
THE SPENCE LAW FIRM NM, LLC
1600 Mountain Rd NW
Albuquerque, New Mexico  87104
505.832.6363
wallin@spencelawyers.com
lauer@spencelawyers.com

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Edward Teller and Glorianna Teller, | **CASE NO: xxx** |
| Plaintiffs, | **COMPLAINT** |
| v. | |
| | **(Tort – Medical Malpractice)** |
| The United States of America, | |
| Defendant. | |

Plaintiffs Edward Teller and Glorianna Teller, by and through their counsel, Richard R. Thomas of Smith LC, and Mel C. Orchard, III, Dennis K. Wallin, and Alisa C. Lauer of The Spence Law Firm (admissions *pro hac vice* to be filed), for their claims against Defendant United States of America ("United States"), allege:

# PARTIES

1. Plaintiffs Edward Teller and Glorianna Teller are husband and wife and are Arizona citizens residing in Shonto, Navajo County, Arizona.

2. Tuba City Regional Health Care Corporation ("Tuba City Health") is a foreign, non-profit corporation doing business in the State of Arizona at 167 Main Street, Tuba City, Coconino County, Arizona, located on the Navajo Nation and in the State of Arizona, and was at all times relevant to this Complaint a certified "tribal organization" pursuant to 25 U.S.C. § 5304(l) that contracts with the United States through the Indian Health Service ("IHS"), pursuant to the Indian Self-Determination and Education Assistance Act ("ISDEA"), 25 U.S.C. § 5301 *et seq.,* to perform health care services previously provided by the IHS.

3. Upon information and belief, at all relevant times, Tuba City Health was carrying out a contract, grant agreement, or cooperative agreement under sections 5321 or 5322, Title 25, and is therefore deemed to be part of the Public Health Service in the Department of Health and Human Services (or "Service").

4. Upon information and belief, and at all relevant times, Tuba City Health's physicians, providers, and employees who caused acts or events to occur in Arizona out of which these claims arise were acting on behalf of the organization or its contractor, or were individuals who provided health care services pursuant to a personal services contract with Tuba City Health for the provision of services in a facility owned, operated, or constructed under the jurisdiction of the Indian Health Service, and were acting within the scope of their employment in carrying out Tuba City Health's ISDEA contract or agreement, and are deemed employees of the Service pursuant to 25 U.S.C. § 5321(d) for purposes of the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2672 et seq. .

5. Zachary Stamile, MD, was at all times relevant to this Complaint a licensed physician practicing emergency medicine on the Navajo Nation and in the state of Arizona, acting on behalf of Tuba City Health, carrying out the ISDEA contract or agreement and within the scope of his employment.

6. Dr. Stamile is deemed an employee of the Service pursuant to 25 U.S.C. § 5321(d) for purposes of the Federal Tort Claims Act, as set forth in Paragraph 5 of this Complaint.

7. Dr. Stamile caused acts or events to occur on the Navajo Nation and in Arizona out of which these claims arise.

8. Katherine R. Pocock, PA, was at all times relevant to this Complaint practicing as a physician's assistant in emergency room care on the Navajo Nation and in the state of Arizona, acting on behalf of Tuba City Health, carrying out the ISDEA contract or agreement. and within the scope of her employment

9. PA Pocock is deemed an employee of the Service pursuant to 25 U.S.C. § 5321(d) for purposes of the Federal Tort Claims Act, as set forth in Paragraph 5 of this Complaint.

10. PA Pocock caused acts or events to occur on the Navajo Nation and in Arizona out of which these claims arise.

11. At all times relevant to the facts alleged in this Complaint, the United States and Tuba City Health, which is deemed to be part of the Public Health Service in the Department of Health and Human Services for purposes of this Complaint, represented to the public that the physicians, nurses, and staff operating at its facility were agents, officers, and employees of Tuba City Health and did not disclaim them.

12. Upon information and belief, Defendant United States is liable for the negligent acts and omissions of deemed employees Zachary Stamile, MD; Katherine Pocock, PA; and all other Tuba City Health employees, agents, officers, physicians, and providers deemed to be employees of the United States and out of which these claims arise.

13. Defendant United States is the proper defendant, and legally responsible party for the negligence of deemed employees Zachary Stamile, MD; Katherine Pocock, PA; and all other Tuba City Health employees, agents, officers, physicians, providers,

and contractors deemed to be employees of the United States (or "personnel") and out of which these claims arise.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1346(b) and 28 U.S.C. § 2671 *et seq.*

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1402(b) because the incidents that are the subject matter of this action occurred in this judicial district and because Plaintiffs reside in this judicial district.

16. Plaintiffs have exhausted their administrative remedies under the Federal Tort Claims Act, 28 U.S.C. §§ 2401, 2675(a).

17. Plaintiffs timely presented Administrative Tort Claims to the proper federal agency pursuant to 28 U.S.C. § 2401 on August 6, 2019.

18. The United States verified that it received Plaintiffs' Administrative Tort Claims on August 12, 2019.

19. Plaintiffs timely and appropriately responded to the federal agency's August 26, 2019 request for substantiating evidence.

20. The United States has failed to respond within a period of six (6) months from the date the Administrative Tort Claim was filed. As such, the Administrative Tort Claim is deemed denied by the United States as of February 13, 2020. Plaintiffs therefore have the right to file this action pursuant to 28 U.S.C. § 2675.

21. In accordance with the amounts presented to the federal agency, the total amount of the claim is seven million dollars ($7,000,000), with Five Million, Five Hundred Dollars ($5,500,000) of that amount is claimed for Mr. Teller's damages, and One Million, Five Hundred Dollars of that amount is claimed for Mrs. Teller's loss of consortium, or whatever amount is deemed necessary and appropriate to compensate Plaintiffs for the damages they suffered arising from the negligent acts of Defendant United States and its deemed employees Dr. Stamile and PA Pocock and other Tuba City Health personnel deemed to be employees of the United States.

4
COMPLAINT

22. Pursuant to 28 U.S.C. §2680(a), this claim is not based upon the exercise or performance or failure to exercise or perform a discretionary function or duty on the part of the Defendant or its employees.

23. Plaintiffs Complaint is timely under 28 U.S.C. § 2675 and 28 U.S.C. § 2401.

24. Defendant has waived sovereign immunity for purposes of this Complaint.

## FACTUAL ALLEGATIONS

25. On November 25, 2017, just before midnight, Mr. Teller presented to the emergency department of Tuba City Health with symptoms of hypoglycemia and was subsequently diagnosed with hypoglycemia.

26. Mr. Teller had hemodynamically stable vital signs.

27. Mr. Teller's vital signs, symptoms, and condition did not require the use of extraordinary, emergent, or urgent means to treat his hypoglycemia.

28. Within approximately twenty-two minutes of his presentation at Tuba City Health, PA Pocock, with the assistance of nursing staff, performed an interosseous (or "IO") procedure on Mr. Teller's right leg to administer a substance identified as dextrose 50% or "D50."

29. There is no documentation that intravenous access was attempted prior to the IO line being placed.

30. IO access is a procedure by which a needle is inserted into a patient's bone to place a line for administration of fluid.

31. IO access is not indicated in a patient with hemodynamically stable vital signs.

32. IO technique is very difficult to perform.

33. IO access may be appropriate in emergent or urgent situations when reliable venous access cannot be achieved quickly or in patients for whom intravascular access is medically necessary and cannot be achieved by other means despite multiple attempts.

34. IO access should be avoided in the lower extremities of a patient with diabetes due to the high risk of infection, venous insufficiency, and peripheral neuropathy.

35. Dextrose 50% (D50) is an intravenous sugar solution that is toxic when administered into the muscle or flesh.

36. Dextrose 50% (D50) is a solution well known to cause complications such as skin and muscle damages and even loss of limb when it extravasates.

37. When administered into the flesh, D50 is known to cause compartment syndrome and tissue necrosis.

38. When IO access is properly performed, it is excruciatingly painful.

39. It is documented in Mr. Teller's medical chart that the IO line was placed without anesthesia.

40. Mr. Teller's medical records indicate that Tuba City Health personnel observed that he was tolerating the procedure without pain and was laughing.

41. Proper placement of the needle into the bone for interosseous access should be confirmed by the ability to withdraw bone marrow.

42. It is documented in the medical chart that placement of the IO line was confirmed by flushing with fluid.

43. There is no documentation that the IO line was aspirated prior to use.

44. There is no documentation that there was any resistance to the pushing of fluids.

45. There is no documentation that the needle was secure in the bone.

46. Mr. Teller's medical records indicate that Tuba City Health providers failed to properly confirm placement of the IO line.

47. Mr. Teller's medical records document that D50 was administered into Mr. Teller's soft tissue.

48. United States deemed employees PA Pocock, Dr. Stamile, and other Tuba City personnel deemed to be employees of the United States, failed to appreciate the administration of D50 into Mr. Teller's soft tissue, failed to properly monitor his condition, and failed to take measures to timely address the administration of D50 into Mr. Teller's soft tissue.

49. Within minutes following the IO procedure, Tuba City Health personnel were able to obtain intravenous access without using IO access through Mr. Teller's left arm, which allowed delivery of D50 intravenously.

50. Mr. Teller's clinical condition improved with correction of his blood sugar through intravenous means and without the IO access.

51. Compartment syndrome or suspected compartment syndrome is a diagnosis that evolves over time and requires repeat, detailed examination of the vascular and neurological status of the extremity along with palpation of the extremity.

52. Proper and timely examination allows for the earliest identification of compartment syndrome and timely intervention.

53. Dr. Stamile did not take any action to address administration of D50 into Mr. Teller's soft tissue until sometime after 4:00 a.m., when he called an orthopedic surgeon and general surgeon for consultation out of concern for compartment syndrome from the infiltration of the D50.

54. The surgeons were advised that Mr. Teller "did not have frank symptoms of compartment syndrome."

55. According to one surgeon, "[at] exactly 4:43 a.m. [he] was called by Dr. Zach Stamile who reported that the IO had infiltrated and the patient had no symptoms of compartment syndrome but wanted to know how long the patient needed to be observed before discharging."

56. The surgeon advised that he would check on the patient in the morning.

57. There is no documentation of repeat exams by Dr. Stamile.

58. At 6:32 a.m., Dr. Stamile called the surgeon again and asked him to come and see Mr. Teller.

59. Upon arrival at approximately 7:15 a.m., the surgeons observed that Mr. Teller's leg was taut and determined that an urgent decompression surgery should be performed.

60. Mr. Teller was then taken emergently to the operating room where he was diagnosed with compartment syndrome of the anterior compartment of the right leg.

61. At 7:30 a.m., an emergency fasciotomy was performed to relieve pressure and increase circulation to the area that was affected by compartment syndrome.

62. The delay in performance of the fasciotomy directly led to the complications Mr. Teller developed.

63. Mr. Teller required subsequent surgery on November 30, 2017, for debridement (removal) of necrotic tissue and immediately thereafter exhibited symptoms of infection, including fever and tachycardia.

64. Mr. Teller required surgery on December 1, 2017, for further debridement and wound care.

65. Mr. Teller required surgery on December 3 or 4, 2017, for further debridement and wound care.

66. Mr. Teller was finally discharged on December 14, 2017.

67. Mr. Teller returned to Tuba City Health on December 18 and 22, 2017, for follow-up care, during which the provider observed that Mr. Teller was in extreme pain and that he likely needed further debridement of necrotic muscle tissue.

68. On December 26, Mr. Teller was admitted to Tuba City Health for surgical debridement.

69. Mr. Teller remained hospitalized until January 12, 2018, when he was discharged.

70. Between January 12, and February 5, 2018, Mr. Teller returned to Tuba City Health seven times for follow-up care.

71. On February 5, 2018, a surgeon at Tuba City Health determined that Mr. Teller required skin graft surgery in order to facilitate the wound healing process.

72. Mr. Teller remained hospitalized until February 12, 2018, when he was discharged.

73. Over the next eight months, Mr. Teller attended more than twenty medical appointments at Tuba City Health and other medical care providers as far away from his home in Shonto as Blanding, Utah, that were directly related to or caused by Defendant's negligent treatment of him, commencing with negligently performing the IO on November 26, 2017.

74. As a result of the negligence of Dr. Stamile, PA Pocock, and other Tuba City personnel deemed to be employees of the United States, Mr. Teller now suffers from debilitating pain; his sleep being interrupted by pain; a severed tendon, foot drop, nerve damage and impaired use of his foot, ankle, and leg; disfigurement; recurrent, chronic, painful and threatening open wounds that require acute care.

75. As a result of the negligence of Dr. Stamile, PA Pocock, and other Tuba City personnel deemed to be employees of the United States, Mr. Teller has limited ability to ambulate and must wear a brace and use a walking cane.

76. As a result of the negligence of Dr. Stamile, PA Pocock, and other Tuba City personnel deemed to be employees of the United States, Mr. Teller has been informed by a health care provider that he will require lifetime pain management through medication or amputation of his leg.

77. As a result of the negligence of Dr. Stamile, PA Pocock, and other Tuba City personnel deemed to be employees of the United States, Mr. Teller can no longer participate in life's activities to the quality and extent normally enjoyed before the injury.

78. As a result of the negligence of Dr. Stamile, PA Pocock, and other Tuba City personnel deemed to be employees of the United States, Mr. Teller is unable to participate in the activities he previously enjoyed and that enriched his life, such as playing with and caring for his grandchild who lives with him and Mrs. Teller; interacting with and enjoying life with Mrs. Teller; enjoying and caring for his animals; traveling; attending and participating in family functions; performing household tasks, handyman tasks, and carpentry; and being able to live, sleep, and function without severe pain or without taking pain medications.

79. As a result of the negligence of Dr. Stamile, PA Pocock, and other Tuba City personnel deemed to be employees of the United States, Mr. Teller's capacity to perform jobs and tasks that were sources of income for him and Mrs. Teller.

80. Mr. Teller and Mrs. Teller have been married for over fifty years.

81. As a result of the negligence of Dr. Stamile, PA Pocock, and other Tuba City personnel deemed to be employees of the United States, Mrs. Teller has suffered the loss of Mr. Teller's affection, protection, support, services, companionship, care, society, and other pleasures of the marital relationship, including loss of Mr. Teller helping with and performing household tasks and chores, handyman work, and carpentry on their home as well as repairing their vehicles; sharing the responsibilities of caring for their grandson who lives with them; enjoying activities they shared together, like traveling and attending and participating in family functions; enjoying the communication and relationship with her marital partner unimpeded by the distractions of pain, sleeplessness, and debilitation from which he now suffers.

## FIRST CAUSE OF ACTION

### Negligence of Zachary Stamile, MD, and Katherine Pocock, PA

82. Plaintiffs restate each of the preceding allegations as if fully stated herein.

83. At all times material to this action, Defendant United States and its deemed employees Dr. Stamile and PA Pocock, as well as other Tuba City Health personnel deemed to be employees of the United States, owed a duty of reasonable care to Mr. Teller to fully and properly investigate, examine, diagnose and treat, or in the alternative, to properly refer and secure appropriate, qualified, and competent medical specialists to investigate, examine, diagnose, and treat Mr. Teller.

84. The United States and its deemed employees Dr. Stamile, PA Pocock, and other Tuba City Health personnel deemed to be employees of the United States individually and collectively failed to exercise the degree of care, skill, and learning that would be expected under similar circumstances of a reasonably prudent healthcare

provider in the profession or class to which each belonged in the state of Arizona, and such failure or failures were a cause of Mr. Teller's injuries and Plaintiffs' damages.

85. The United States and its deemed employees Dr. Stamile, PA Pocock, and other Tuba City Health personnel deemed to be employees of the United States breached their respective standards of care owed to Mr. Teller through their negligent acts and omissions, including but not limited to:

    a. Failing to properly determine the proper course of treatment in light of Mr. Teller's vital signs and condition;

    b. Failing to use or reasonably attempt to use an appropriate or a less invasive means of treating Mr. Teller's condition;

    c. Inappropriately using intraosseous access to administer dextrose 50% (D50) on a patient presenting with Mr. Teller's vital signs and in his condition;

    d. Performing the interosseus procedure without the skill and training required to perform the interosseus procedure in a reasonably safe manner;

    e. Failing to properly perform the interosseus procedure;

    f. Failing to properly confirm placement of the interosseus line prior to use;

    g. Administering dextrose 50% (D50) through an unconfirmed IO line;

    h. Administering D50 into Mr. Teller's soft tissue;

    i. Failing to appreciate the interosseus line was improperly placed;

    j. Failing to properly evaluate Mr. Teller.

    k. Failing to perform repeat examinations of the leg.

    l. Failing to promptly obtain a surgical consult after realizing that the D50 solution had extravasated into the muscles of Mr. Teller's leg.

    m. Failing to appreciate Mr. Teller's symptoms of compartment syndrome or suspected compartment syndrome.

    n. Failing to timely communicate Mr. Teller's symptoms of compartment syndrome to surgeons who could address them.

  o. Delaying definitive treatment for compartment syndrome.

  p. Failing to properly train, oversee, or supervise the person or persons assessing Mr. Teller's vital signs and condition, the determination of whether IO access was the proper course of treatment, performance of the IO access procedure, and evaluating his condition after the IO access was performed;

  q. Performing or permitting others to perform the IO access procedure without the level of skill, training, experience, and competence necessary to perform it in a reasonably safe manner or within the applicable standard of care;

  r. Failing to provide reasonably appropriate medical care and treatment under the circumstances;

  s. Failing to exercise reasonable care under the circumstances;

  t. Failing to otherwise meet the requisite standards of care and practice in their fields.

86. The negligent acts and omissions of Dr. Stamile, PA Pocock, and other Tuba City Health personnel deemed to be employees of the United States were individually and collectively a cause of Edward Teller's serious physical and emotional injuries and other damages as set forth herein.

87. Because Dr. Stamile, PA Pocock, and other Tuba City Health personnel were acting within the scope of their employment or agency for Tuba City Health, Defendant United States is directly and vicariously liable for their negligent acts and omissions.

## SECOND CAUSE OF ACTION

### Negligent Policies, Training, or Supervision

88. Plaintiffs restate each of the preceding allegations as if fully stated herein.

89. Defendant United States, its agents, management, supervisors, physicians, providers, and deemed employees, including Dr. Stamile, had the duty to train, supervise, direct, and monitor the actions of its deemed employee, PA Pocock, and other Tuba City personnel who are deemed employees of the United states, in their actions and omissions as set forth in the Factual Allegations and the First Cause of Action of this Complaint.

90. Defendant United States, its agents, management, supervisors, physicians, providers, and deemed employees, including Dr. Stamile, had the duty to adopt or ensure the adoption of: appropriate policies, procedures, protocols, and training on the subjects, acts, or practices set forth in the Factual Allegations and the First Cause of Action of this Complaint, including appropriate policies, procedures, protocols, and training on conditions under which to perform IO access, alternatives to IO access, appropriate use of tools or equipment to perform IO access, how to properly perform IO access, how to validate that IO access has been properly performed, and measures to take when IO has been improperly performed or infiltration, leakage, or extravasation has occurred; and/or by failing to implement appropriate training;

91. Defendant United States, its management, supervisors, physicians, providers, and deemed employees, including Dr. Stamile, breached their duties by failing to train, supervise, direct, and monitor its employees, contractors, and agents; and/or failing to adopt and enforce appropriate policies, procedures, and protocols on conditions as set forth herein. and/or by failing to implement appropriate training;

92. PA Pocock, and other Tuba City Health personnel deemed to be employees of Defendant United States were negligently trained or instructed on appropriate policies, procedures, and protocols on conditions under which to perform IO access, alternatives to IO access, appropriate use of tools or equipment to perform IO access, how to properly perform IO access, how to validate that IO access has been properly performed, and measures to take when IO has been improperly performed or infiltration, leakage, or extravasation has occurred..

93. PA Pocock and other Tuba City Health personnel deemed to be employees of Defendant United States were negligently supervised or monitored by United States deemed employee Dr. Stamile in the determination as to whether to perform IO access on Mr. Teller, the performance of IO access on Mr. Teller, validation of whether IO access had been properly performed, and measures to take when IO has been improperly performed or infiltration, leakage, or extravasation has occurred.

94. Defendant United States and its deemed employee Dr. Stamile had actual or constructive knowledge that PA Pocock and other deemed employees were not competent or adequately trained to undertake the tasks delegated, and that there were inadequate policies, procedures, and training in place regarding determining whether to perform IO access, performance of IO access, validation of whether IO access had been properly performed, and measures to take when IO has been improperly performed or infiltration, leakage, or extravasation has occurred.

95. The acts and omissions of Defendant United States and deemed United States employee Dr. Stamile constitute negligence.

96. As a result of the negligent acts and omissions of Defendant United States and deemed United States employee Dr. Stamile, PA Pocock and other deemed employees acted negligently as set forth in the Factual Allegations and the First Cause of Action.

97. Defendant United States and deemed employee Dr. Stamile's negligent training, supervision, direction, and monitoring, and/or policies, procedures, and protocols were a cause of Mr. Teller's injuries and damages.

98. Defendant United States is directly liable and vicariously liable for the acts and omissions of Dr. Stamile, PA Pocock, and other Tuba City Health personnel deemed to be employees of the United States, resulting from negligent policies, training, supervision, direction, or monitoring.

### THIRD CAUSE OF ACTION

### Loss of Consortium

99. Plaintiffs restate each of the preceding allegations as if fully stated herein.

100. As a result of the negligent acts and omissions of the United States and its deemed employees, Dr. Stamile, PA. Pocock, and other Tuba City Health personnel deemed to be employees of the United States, Mr. Teller can no longer provide the affection, protection, support, services, companionship, care, society, and other pleasures

of the marital relationship to Plaintiff Glorianna Teller, who is Mr. Teller's wife of over fifty years.

101. As a result of the negligent acts and omissions of the United States and its deemed employees, Dr. Stamile, PA Pocock, and other Tuba City Health personnel deemed to be employees of the United States, Plaintiff Glorianna Teller has suffered loss of her husband's care, affection, companionship, and other pleasures of the marital relationship.

102. Defendant United States is directly liable and vicariously for the negligent acts and omissions of its deemed employees, Dr. Stamile, PA Pocock, and other Tuba City Health personnel deemed to be employees of the United States, and those negligent acts or omissions are a cause of Mrs. Teller's damages for loss of consortium.

## DAMAGES

103. Plaintiffs restate each of the preceding allegations as if fully stated herein.

104. As a result of the negligent acts or omissions of Defendant United States; and as a result of the negligent acts or omissions of its deemed employees Zachary Stamile, MD, Katherine Pocock, PA, and other Tuba City Health personnel deemed to be employees of the United States, Plaintiff Edward Teller is entitled to recover damages, including but not limited to damages for:

    a. Pain, discomfort, and suffering already experienced and reasonably probable to be experienced in the future;

    b. Emotional pain and suffering, including anxiety, already experienced and reasonably probable to be experienced in the future;

    c. Loss of enjoyment of life, that is, the participation in life's activities to the quality and extent normally enjoyed before the injury, already experienced and reasonably probable to be experienced in the future;

    d. Disability or incapacitation already experienced and reasonably probable to be experienced in the future;

    e. Disfigurement already experienced and reasonably probable to be

experienced in the future;

  f. Loss of income and earning capacity already experienced and reasonably probable to be experienced in the future;

  g. Other pecuniary loss already experienced and reasonably probable to be experienced in the future;

  h. Medical and related expenses already experienced and reasonably probable to be experienced in the future;

 Plaintiff Glorianna Teller is entitled to recover damages including but not limited to:

  a. Loss of love, care, affection, companionship, and other pleasures of the marital relationship already experienced and reasonably probable to be experienced in the future.

 Both Plaintiffs are entitled to recover:

  a. All allowable costs, expenses, and fees associated with this litigation; and

  b. All allowable interest.

 WHEREFORE, Plaintiffs Edward Teller and Glorianna Teller respectfully request that the Court enter judgment against Defendant United States in an amount supported by the allegations of this Complaint as follows:

  A. Enter judgment in favor of Plaintiffs against Defendant;

  B. Award Plaintiff Edward Teller all damages in the amount of Five Million, Five Hundred Thousand Dollars ($5,500,000), or whatever amount is deemed necessary to compensate him for his injuries consistent with the allegations of this Complaint;

  C. Award Plaintiff Glorianna Teller all damages for loss of consortium in the amount of One Million, Five Hundred Thousand Dollars ($1,500,000), or whatever amount is deemed necessary to compensate her for her injuries consistent with the allegations of this Complaint.

   D. Judgment against Defendant for costs, expenses, fees, and interest allowed by law;

   E. And for such other and further relief as the Court deems just and equitable.

Dated: June 12, 2020      SMITH LC

           By: /s/ Richard R. Thomas
             Richard R. Thomas
             40 North Center Street, Suite 104
             Mesa, Arizona 85201
             E: rthomas@smith-lc.com

*Admission Pro Hac Vice (to be filed):*

    Mel C. Orchard, III
    The Spence Law Firm, LLC
    orchard @spencelawyers.com
    Dennis K. Wallin
    Alisa C. Lauer
    The Spence Law Firm NM, LLC
    wallin@spencelawyers.com
    lauer@spencelawyers.com

*Attorneys for Plaintiffs*